IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY REIMANN,

      Plaintiff,             No. CIV S-04-1174 GGH

      vs.

JO ANNE B. BARNHART,
Commissioner of
Social Security,

      Defendant.           <u>ORDER</u>

_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, the court denies plaintiff's Motion for Summary Judgment or Remand, and grants the Commissioner's Cross Motion for Summary Judgment. The Clerk is directed to enter judgment for the Commissioner.

<u>BACKGROUND</u>

      Plaintiff, born January 14, 1956, applied for disability benefits on July 10, 2002. (Tr. at 45.) Plaintiff alleged he was unable to work since June 20, 2002, due to pain in the thoracic, cervical and lumbar spine. (Tr. at 45, 50, 15.) In a decision dated September 26, 2003,

1

ALJ Mark C. Ramsey determined that plaintiff was not disabled.[1]  The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant was not disabled prior to June 7, 2002, because he was engaged in substantial gainful activity since June 7, 2002.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

| | | |
|---|---|---|
| | 5. | The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision. |
| | 6. | The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527). |
| | 7. | The claimant has the following residual functional capacity: light work. |
| | 8. | The claimant's past relevant work as dark room technician did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565). |
| | 9. | The claimant's medically determinable impairments do not prevent him from performing his past relevant work. Alternatively, Rule 202.21, table No. 2 of Appendix 2, Subpart P, Regulations No. 4, directs a conclusion that, the claimant is not disabled because a significant number of jobs exist that he can perform.  In, addition, even if he had occasional limitations in stooping, climbing, crawling, and crouching, the base of light work would not be significantly eroded (Social Security Ruling 83-14). |
| | 10. | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(e)). |

(Tr. at 22-23.)

ISSUES PRESENTED

Plaintiff has raised the following issues:  A.  Whether the ALJ Failed to Give Adequate Weight to the Opinion of the Treating Physician; B.  Whether the ALJ Failed to Properly Evaluate Plaintiff's Credibility; and C.  Whether the ALJ Failed to Properly Evaluate Witness Statements.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

The record indicates that plaintiff has suffered back ailments for many years due to a variety of causes. He did heavy work moving pallets of liquor and other freight, and lifting shelves and setting displays on shelves, resulting in injuries to his neck, shoulder and back in 1991, 1999 and 2000. (Tr. at 115, 263.) He also sustained a knee injury when a motorcycle fell on him while he was standing next to it. (Tr. at 256.) Another time a deer came through the driver's window while he was driving the vehicle, and hit him in the chest. (Id. at 264.) Plaintiff has had one back surgery, a laminectomy in 1991, and knee surgery in 2001. (Id. at 168, 123.)

Plaintiff's attempts to perform various types of work in spite of the injuries he has sustained is admirable; however, as explained below, the ALJ's decision to deny benefits is supported by substantial evidence.

A. The ALJ Property Evaluated The Opinion of Plaintiff's Treating Physician

First, plaintiff contends that the ALJ failed to give appropriate weight to plaintiff's treating physician, Dr. Harden, who opined that plaintiff was disabled.

The weight given to medical opinions depends in part on whether they are roffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821,

\\\\\

\\\\\

4

830 (9th Cir. 1995).² Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),³ except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

² The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

³ The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1         Plaintiff's treating physician, Dr. Harden, proffered evaluations of plaintiff's ability to work on September 2, 2003. (Tr. at 228-35). In short, Dr. Harden did not think plaintiff could work a steady job due to his back pain. (Tr. at 228.) He reported significant physical limitations which essentially would preclude plaintiff from performing any work. Dr. Harden reported plaintiff could do less than sedentary work—plaintiff could never lift twenty to fifty pounds, and could rarely lift up to ten pounds. (Id. at 234.) Plaintiff could sit for thirty minutes at one time, stand for ten minutes at a time, and walk for two hours in an eight hour day. (Id. at 232.) Plaintiff would have to be able to walk around every ninety minutes for ten minutes at a time. (Tr. at 233.) Dr. Harden also opined that plaintiff's pain was severe enough to interfere with attention and concentration on a frequent basis. (Id. at 231.) He thought these limitations would last at least twelve months. (Id. at 232.) A job which plaintiff could do would require him to shift positions at will from sitting, standing or walking and he would need to take unscheduled breaks hourly in an eight hour day and rest for up to one hour before returning to work. (Id. at 233.) Plaintiff would likely miss work more than four days per month. (Id. at 235.) These limitations were based on Dr. Harden's diagnosis of thoracic and lumbar disc disease with chronic pain. (Tr. at 195.) Chart notes state that this diagnosis is documented by an MRI. (Tr. at 199.)

        Dr. Harden began a course of treatment for plaintiff's back in September 20, 2001 due to a work injury sustained on November 7, 2000. (Tr. at 213.) Dr. Harden examined plaintiff on October 22, 2001, and found mild back tenderness and full range of motion. (Tr. at 212.) In January, February and April, 2002, plaintiff reported that he felt much better with physical therapy. (Id. at 204, 207.) He could go up to three days sometimes without taking any Vicodin. (Id.) On June 25, 2002, plaintiff reported that he obtained a sedentary job but had to quit because it required long term sitting which causes pain in the mid-back and occasional pain down the left leg and lower back. (Id. at 203.) Sometime in 2002, Dr. Harden authorized a chiropractor twice a week for four weeks. (Id.) Exam at this time indicated full range of motion

of the neck, thoracic spine and lower back, as well as normal sensory and motor exam. (Id.) Future plans included a functional evaluation and vocational rehabilitation. It was later noted on December 30, 2002, that plaintiff had gone to a chiropractor two times a week for one to two months and it "really helped." (Id.) At that time, he was taking Vicodin and Celebrex one to two times a day. There was little pain in the neck and lower back, but worse pain in the mid back. (Id.)

On January 24, 2003, plaintiff was referred by Dr. Harden for an MRI of the thoracic spine which found a very small central disc protrusion at T6-7 which had decreased in size since December 3, 2000. There was also a questionable very small protrusion at T8-9, as well as a small hemangioma[4] in the vertebra, which had also decreased in size. (Tr. at 197, 102.)

The ALJ rejected Dr. Harden's opinions as inconsistent with his own and other clinical findings in the record. (Tr. at 20.) The ALJ pointed out that the MRIs showed only mild degenerative changes, and there were no clinical examination findings that would support these physical limitations. (Id.) The ALJ refers to the residual functional capacity questionnaire by Dr. Harden, dated January 29, 2003, which bases its assessment on the following clinical findings, laboratory and test results: MRI of January 24, 2003 (small disc protrusion in thoracic spine), MRI of March 27, 1998 (mild epidural fibrosis of the lumbar spine, no herniation), and MRI of December, 2000 (mild bulging at C5, 6, 7). (Tr. at 186, 230.) As can be seen from these exhibits 12F and 16F, which the ALJ refers to as support for the statement that there are only mild degenerative changes on MRIs, Dr. Harden's opinion that plaintiff cannot work is not supported by this objective evidence. The RFC statements give a much more severe interpretation of the MRI as just set forth. In fact, these questionnaires by Dr. Harden do not mention "mild degenerative changes" at all.

\\\\\

---

[4] A hemangioma is a benign tumor formed with new blood vessels. Dorland's Illustrated Medical Dictionary at 587.

1         The ALJ also found that the severe limitations placed upon plaintiff by Dr. Harden were also found to be inconsistent with his own treatment records because those records did not reflect significant concentration or attention difficulties or side-effects from medication. (Tr. at 20.) Plaintiff exhibited tenderness in the thoracic and lumbar spine over numerous visits; however, his condition remained stable over time and was helped by medication and physical therapy. (Id., 194-95, 201.)

         Instead, the ALJ chose to rely on the consultative examiner's opinion which found that plaintiff had no functional limitations. (Id.) This report by Dr. Rajguru was consistent with the initial determination made by Disability Determination Service. (Id.) Also supporting this opinion were reports by physical therapists, acupuncturists and chiropractors which noted only minimal limitations consistent with light work. (Id.) Dr. Rajguru, who performed an internal medicine consultative exam at the request of the Administration, found no functional limitations on August 15, 2002. (Tr. at 171.) Range of motion in the back, neck, shoulders, hips and extremities was normal. (Tr. at 170-71.) The source for Dr. Rajguru's opinion appears to have been based on his observations and exam as well as an MRI, although it is not entirely clear whether he had the benefit of the remainder of plaintiff's medical records. The report states that plaintiff was the source of information for the evaluation, but it also states that an MRI of the lumbar spine was reviewed by Dr. Rajguru. It does not mention whether other records were reviewed. (Tr. at 168, 169.)

         Although the ALJ's reference to the consistency of this report with other reports of health practitioners who are not physicians is of lesser importance because those types of specialists are entitled to lesser weight, they do serve to bolster Dr. Rajguru's report. See 20 C.F.R. § 404.1513 (d)(1). The regulations differentiate between opinions from "acceptable medical sources" and "other sources." For example, licensed physicians and psychologists are considered "acceptable medical sources," and chiropractors and naturopaths are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status

when assessing weight.  <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

The records of the practitioners who rendered therapy outside of medical care included an acupuncturist, physical therapist and chiropractor.  Some of these other sources were consistent with Dr. Rajguru.  For example, chiropractor Dr. Weaver performed an evaluation for worker's compensation in April, 2001.  He noted that plaintiff had full range of motion in the neck. (Tr. at 113.)  There was limitation of anterior flexion of the thoracolumbar spine, but other planes of motion were normal. (<u>Id.</u>)  Although there was lower back pain on straight leg raising, motor power was intact in both lower extremities.  Plaintiff could squat, and heel and tow walk without difficulty.  (<u>Id.</u>)  Dr. Weaver noted mild epidural fibrosis on the left through an MRI; however, there was no evidence of recurrent disc herniation.  Dr. Weaver reviewed the x-rays and MRIs in the file, and concluded plaintiff had resolved left shoulder injury, unresolved left paraspinous cervical strain, unresolved thoracic spine injury, and unresolved lumber sprain/strain. (Tr. at 115.)  Although plaintiff had received treatment, he had shown minimal permanent net improvement, resulting in loss of 50 to 75 percent of his pre-injury capacity for most activities.  Dr. Weaver would preclude plaintiff only from heavy lifting. (Tr. at 116.)

The physical therapist on March 7, 2002, after giving plaintiff treatment since July 3, 2001, stated that plaintiff's back strength had improved as did his thoracic joint mobility/flexibility.  (Tr. at 145.)  Pain had also decreased, and plaintiff thought that physical therapy was helping him.  (<u>Id.</u>)

It is true that chiropractor Dr. Remedios was more restrictive in his opinion, stating: "[r]estricting his lifting, reaching, bending, pushing, pulling and other similar activities while helpful has failed to resolve his symptoms.  In essence, as long as Mr. Reimann does nothing he is okay.  The slightest strain on his spine greatly increases his symptoms." (Tr. at 105.)  Dr. Remedios based his opinion on his treatment of plaintiff's mid and upper back pain.

(Id.) Nevertheless, he added that plaintiff was a candidate for vocational rehabilitation, and an assessment of his capabilities for a change in occupation was warranted. (Id.) Therefore, he was not as restrictive as Dr. Harden because he implied that plaintiff could still work.

The ALJ also pointed out that Dr. Harden did not prescribe aggressive treatment such as epidural steroid injections, nerve blocks, or referral to an orthopedic surgeon, but that his treatment was very conservative. (Id. at 21.) Finally, the ALJ noted that no other medical opinion in the record assigned such specific limitations for plaintiff. (Id.)

The ALJ's specific reasons for rejecting this opinion are supported by the clinical findings in the record. An MRI of the lumbar spine, dated January 31, 2001, stated that there was a remote left sided laminectomy defect at L5-S1, no recurrent disc extrusion or spinal stenosis, but there was desiccation[5] of the L5-S1 disc with loss of disc height, annular bulging at L4-5 without significant spinal stenosis, and desiccation of the L4-5 disc without significant loss of disc height. (Tr. at 101.) There was no significant change compared to March 27, 1998.[6] (Id.) An MRI of the thoracic spine, dated December 3, 2000, states that there was a small central disc protrusion at T6-7 without spinal stenosis, and a hemangioma within the T12 vertebral body. (Id. at 102.) An MRI of the cervical spine on this date states that an exam for disc extrusion and significant spinal stenosis was negative, and revealed minimal annular bulging at C5-6 and C6-7. (Id. at 103.) A view of the thoracic spine on October 25, 2000 indicated a very mild degree of mid dorsal dextroscoliosis. (Id. at 104.) On September 20, 2001, Dr. Harden had the benefit of these MRIs and opined that they showed no obvious abnormalities. (Id. at 213.)

\\\\\

---

[5] Desiccation is the act of drying up. Dorland's Illustrated Medical Dictionary at 364 (26th Ed. 1985).

[6] The earlier MRI showed mild epidural fibrosis "in the posterior annulus in the left epidural space running along the S1 nerve root at L5-S1. No recurrent disc herniation is seen. The disc fragment which was seen in this area on the previous MR of 4-15-92 is no longer seen." (Tr. at 226.)

The most recent MRI does indicate some problems, as mentioned earlier, including two very small disc protrusions and a small hemangioma. (Tr. at 197.) Nevertheless, it shows improvement over the previous MRI of December, 2000, in which the disc protrusion and hemangioma were both described as larger than they were in January, 2003. (Tr. at 102.)

A residual functional capacity assessment by Dr. Dann, of the Disability Determination Service, on December 30, 2002, indicates that plaintiff can occasionally lift twenty pounds, and frequently lift ten pounds. (Tr. at 179.) He could stand and/or walk for six hours in an eight hour day, sit for six hours, and do unlimited pushing and pulling. He could occasionally climb, stoop, crouch and crawl, and frequently balance and kneel. (Tr. at 180.) This check-off report, however, contained little explanation of the bases for its conclusions, and should not carry much weight. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). Furthermore, this physician did not examine plaintiff. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, the ALJ's reliance on a consulting physician whose opinion is supported by objective clinical finds was sufficient to reject the opinion of plaintiff's treating physician.

B. Whether the ALJ's Credibility Finding Was Supported by Substantial Evidence

Plaintiff contends that the ALJ erred in discrediting his credibility without following the proper analysis.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

\\\\\

Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46.[7] If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[8] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

\\\\\

---

[7] This does not mean, however, that the lack of objective evidence to support the pain alleged is irrelevant to the analysis.

[8] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

   In this case, the ALJ found plaintiff not fully credible for a variety of reasons.  He stated that plaintiff's complaints of physical limitations, pain and spasms were not supported by the records of treating sources which indicate that medication relieves plaintiff's pain. (Tr. at 21.) Furthermore, the findings of the treating source are almost normal, with no reflex changes, neurological deficits, strength loss, muscle spasm or atrophy.  X-rays showed only mild disc bulging with an improvement in the most recent MRI.  (Id.)  The record also showed mild degenerative changes, and no stenosis or herniation.  (Id.)  The ALJ further noted that although plaintiff complains of a worsening in his condition, Dr. Harden found that plaintiff's condition has been stable for a long time.  The ALJ pointed to the record of chiropractic visits and physical therapy, both of which resulted in some benefit.  Furthermore, there has been no aggressive treatment or surgery, and plaintiff has engaged in light activities of daily living, including shopping, walking his dog, cooking, vacuuming, yard work, and riding a scooter.  (Id.)  Finally, the ALJ pointed out that plaintiff could work for two hours a day as a masseuse which involves strenuous activity.  (Id.)

   The record supports this assessment.  First, the MRIs of record support the lack of pain as set forth by the ALJ.  Although plaintiff definitely has some disc protrusion and bulging, it does not support the degree of impairment alleged and found by Dr. Harden.  (Tr. at 101, 103, 197.)  The ALJ correctly considered this objective evidence along with medication and treatment, both of which have improved plaintiff's condition.  Dr. Harden's own records indicate that medications did work well.  (Tr. at 194, 201.)  Plaintiff also reported to this physician that the chiropractor appointments "really helped," and physical therapy did help.  (Tr. at 199, 201, 204.) The physical therapists's reports were consistent.  (Tr. at 141, 142, 143.)  On March 7, 2002, for example, plaintiff reported that he was pleased with his progress and continued to experience a decline in pain.  (Id. at 143, 145.)  The times when plaintiff appeared to be suffering more pain

1   were after working as a masseuse. (Tr. at 199.)  Even then, plaintiff reported that he was not
2   having a lot of neck or lower back pain. (Id.)  When he was not doing this more strenuous two
3   hour a day job, but working as much as six to eight hours a day, plaintiff reported that he could
4   go for three days without taking any Vicodin. (Tr. at 204.)

5   Dr. Harden also reported full range of motion in the back and neck and only mild
6   tenderness. (Tr. at 199, 201, 212.)

7   Plaintiff's daily activities questionnaire also supports the ALJ's findings.  Plaintiff
8   stated that he could take care of his personal needs, and could walk a mile on a good day, but had
9   to lie down after. (Tr. at 69.)  Plaintiff found it difficult to climb stairs but could occasionally lift
10  groceries out of the car if not too heavy. (Id. at 70.)  He can drive a car for ten to fifteen minutes
11  at a time. (Id.)  He can ride a scooter when his back does not hurt, and walk his dog twice a day.
12  (Id.)  He also vacuums, cooks, goes grocery shopping, mows his parents' lawn, and changes the
13  oil in his car. (Tr. 252, 253, 257.)

14  Furthermore, if plaintiff's back problems were as bad as described by Dr. Harden,
15  why did he not seek help from a back specialist rather than this family physician?  In fact,
16  treatment was fairly conservative, with no surgery or brace (other than for plaintiff's knee), but
17  was limited to medication, physical therapy and chiropractic services.  See Meanel v. Apfel, 172
18  F.3d 1111, 1114 (9th Cir. 1999) (plaintiff's claim of extreme pain inconsistent with "minimal,
19  conservative treatment" received).

20  The fact that plaintiff has attempted four different types of work in order to find
21  something suitable to his physical problems does enhance his credibility.  After his original jobs
22  as assistant manager for a liquor store and merchandiser and salesperson for a liquor distributor,
23  plaintiff had to quit because they involved a lot of lifting and driving. (Tr. at 248.)  He then tried
24  being a dark room technician, which involved too much walking, dispatcher which involved too
25  much sitting, dark room technician, and currently works four hours a week as a masseuse. (Id. at
26  251.)  Although plaintiff should not be penalized for these attempts to perform substantial

gainful activity, the objective evidence just does not support the level of limitation alleged by him. Based on the foregoing record evidence, substantial evidence supports the ALJ's credibility determination.

C. Whether the ALJ's Decision Improperly Failed to Consider Plaintiff's Witness Evidence

Plaintiff contends the ALJ did not adequately consider the third party witness statements submitted by three of plaintiff's friends.

An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The record contains three letters from friends which point out that plaintiff dealt with his back problems by attempting surgery, trying different jobs and special car seats, and giving up activities. (Tr. at 85-87.) The letters indicate that plaintiff cannot sit or stay upright for any length of time, and tries to find a position lying on the floor to get relief. (Id. at 86.) They point out that plaintiff did not want to apply for disability because he is so self-reliant and hard working. (Id. at 85.)

The ALJ specifically referred to these letters, but discounted them because, by stating that plaintiff experienced severe pain, they were inconsistent with the medical records which stated that plaintiff obtained relief from medication. (Tr. at 21.) The ALJ opined that the

letters were also inconsistent with the almost normal findings in the treating records, specifically the x-ray findings which include an MRI of the thoracic spine showing an improvement in disc bulging. (Id., 197, 102.) Plaintiff's own subjective reports of his pain and functional limitations were consistent with these letters. Therefore, these lay witness' observations were cumulative to the evidence set forth and thoroughly addressed by the ALJ.

CONCLUSION

ACCORDINGLY, plaintiff's Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 9/8/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Reimann1174.ss